FILED
2020 Jul-21  AM 10:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| PROGRESSIVE SPECIALTY INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO.: 2:20-cv-00891 |
| | ) | |
| T & C TRANSPORT, LLC; AARON DEMETRIUS COOKE; FRANCIS PATRICIA VANN and RICARDO VANN; | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S OPPOSITION TO
## DEFENDANT VANNS' MOTION TO DISMISS

Progressive Specialty Insurance Company ("Progressive") opposes Defendants Patricia and Richard Dale Vanns' ("the Vanns") Motion to Dismiss [Doc. 6].

This is an insurance coverage declaratory judgment action. The Vanns say it should be dismissed because: (1) the court lacks subject matter jurisdiction under Rule 12(b)(1); (2) the declaratory judgment complaint fails to state a claim upon which relief can be granted under Rule 12(b)(6); and (3) the Court should decline to exercise jurisdiction over the action. Their arguments are refuted in turn.

**1.  The court has subject matter jurisdiction.**

Congress expressly granted the district courts jurisdiction over declaratory judgments in 28 U.S.C § 2201.  *See Nat'l Trust Ins. Co. v. Burdette,* 783 F.Supp.2d 1193, 1196 (M.D. Ala. 2011).  Courts have routinely held that the Declaratory Judgment Act "confers on federal court's unique and substantial discretion in deciding whether to declare the rights of litigants."  *Atlantic Cas. Ins. Co. v. GMC Concrete Co*., 2007 WL 4335499 *2 (S.D. Ala.) (quoting *Wilton v. Seven Falls Co*., 515 U.S. 277, 286 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995)).

Therefore, the argument that this Court lacks subject matter jurisdiction is without merit.

**2.  The complaint meets the *Iqbal* standard for pleading.**

Progressive's complaint sets forth facts showing a plausible basis for a declaration of non-coverage. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

The complaint contains a recitation of facts and quotes of pertinent policy language: "T&C was under contract to transport vehicles for CarMax. T&C dispatched Cooke to transport the Honda from a car auction to the CarMax location in Hoover. Upon arriving at the CarMax facility, Cooke did not load the Honda for transport as he had been instructed to do by T&C. Instead, Cooke for his own purposes drove the Honda away from the CarMax.  He was several miles away from CarMax when the collision occurred." (Doc. 1, Complaint, ¶ 7).

The complaint shows that the policy only covers an accident involving use of an "insured auto."  (Doc. 1, Complaint, ¶ 12).  The coverage clause provides coverage for: "damages … for **bodily injury** … for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of that **insured auto."** (*Id.*)

"Insured autos" are limited to the autos listed on the declaration page. The policy defines "insured auto" as:

> 5.   **"Insured auto" or "your insured auto"** means:
>
> a.   Any **auto** specifically described on the **declarations page**….

(*Id.* at 13).[1]

The declarations only list the following autos:

**Auto coverage schedule**

1.   **2001 Ford F350**
     VIN:   1FTWW32F71ED60575

2.   **2015 Lawrimore Trailer**
     VIN:   5WUBU1825FF042082

The auto Cooke drove in the accident was a 2008 Honda CVR.  (*Id.* at ¶ 6). It was not listed on the declarations.  (*Id.* at ¶¶ 13 & 14). Therefore, it was not an "insured auto," and the policy does not cover the accident.

---

[1] The definition also contains subparts for an additional auto and replacement auto that are inapplicable to this case.

Accordingly, the complaint satisfied the pleading standard to state a claim for a declaration of non-coverage.

### 3.  The case is appropriate for this Court's decision.

The Vanns' core argument is that the duty to indemnify is not ripe because the underlying case has not been tried.[2]  That, however, is not an impediment to proceeding in this case.  *See Maryland Cas. Co. v. Pacific Coal & Oil Co*., 312 U.S. 270, 85 L. Ed. 826, 61 S. Ct. 510 (1941) (holding that an actual controversy exists between the insurer and insured even though the liability case against the insured had not been reduced to a judgment).  The Eleventh Circuit affirmed deciding both the duty to defend and indemnify based on an exclusion for injuries to employees despite the pendency of the underlying case in *Prog. Mtn. Ins. Co. v. MADD Transp., LLC,* 633 Fed. Appx. 744, 747 (11th Cir. 2015)(Ga.) ("And because the employee exclusion applies, Progressive is relieved from its obligations.").  The court held: "'([A] case or controversy exists to support declaratory relief between an injured third party and an insurance company even in the absence of a judgment in favor of the third party against the insured.'). And if the policy's employee exclusion applies, it relieves Progressive of all of its obligations under the policy." *Id.* at n. 4 (internal citations omitted).

---

[2] Clearly the duty to defend is ripe as Progressive is currently defending under a reservation of rights.

A close reading of cases shows the test for ripeness is not whether the underlying case remains pending, but whether the policy defense goes to conclusive, threshold issues for coverage, such as failure to satisfy the insuring clause requirement of a covered loss or falling within an exclusion that completely bars coverage.  Stated differently, ripeness includes considerations whether the claim is sufficiently mature with delineated issues so the court can engage in effective decision making. That test is met here.

The duty to indemnify is ripe where the case fails to meet a threshold for coverage not dependent on the evidence at trial, such as (i) the person is not an "insured," (ii) the auto was not covered by the policy, (iii) the policy does not cover the risk (a homeowners policy does not cover auto accidents), or (iv) an exclusion bars all coverage.

For example, in the following cases, the courts held there was no duty to indemnify (despite pendency of the underlying case) because of failure to meet a threshold requirement for coverage:

➢ In *Shalimar Contractors v. Am. States Ins. Co.*, 975 F. Supp. 1450, 1456 - 1458 (M. D. (Ala. 1997), *aff'd without opinion,* 158 F.3d 588 (11th Cir. 1998), the absolute pollution exclusion clause in a contractor's commercial general liability policy barred a duty to defend and indemnify for bodily

injury allegedly resulting from the release or escape of lead paint during an abatement project in an apartment building.

➢ In *State Farm Fire & Cas. Co. v. Sexton & Sexton, Inc.*, 985 F. Supp. 1336, 1339-1340 (M.D. Ala. 1997), there was no duty to indemnify because the putative insured did not meet the definition of "insured."

➢ In *Allstate Indem. Ins. Cov. v. Stewart, el al.*, CV 10-BE-02959-6 (Jan. 7, 2014), there was no duty to indemnify for a wrongful death that occurred in an auto accident based on auto accident exclusion in a homeowners policy.

➢ In *Horace Mann Ins. Co. v. Fore*, 785 F. Supp. 947 (M.D. Ala. 1982), there was no duty to indemnify on a molestation claim because of failure to satisfy the threshold requirement of an "education activity" in the coverage clause.

In each case, both the duty to defend and indemnify was ripe, because the claims failed to pass a critical threshold for coverage: (1) the failure to meet requirements of the insuring agreement (not an "insured" in *Sexton*; no "educational activity" in *Horace Mann;* and (2) a definitive exclusion (the auto exclusion in *Stewart*; the "absolute pollution exclusion" in *Shalimar*.)  These cases show that the question of ripeness of the duty to indemnify should not be decided by mere talismanic dismissals.

Moreover, in many cases dealing with such definitive threshold coverage issues, the courts have held that if the broader duty to defend does not exist, then *a*

*fortiori* there is no duty to indemnify. *Trailer Bridge, Inc. v. Ill. Nat'l Ins. Co.*, 657 F.3d 1135, 1146 (11th Cir. 2011). ("'[A] court's determination that the insurer has no duty to defend requires a finding that there is no duty to indemnify.'") *See Pa. Nat'l Mut. Cas. Ins. Co. v. Ret. Sys. of Ala.*, 104 F. Supp. 3d 1313, 1316, 1321 (N.D. Ala. 2015) (mold exclusion barred all coverage): "[w]hether there is a duty to *indemnify* under the policy [often] will depend on the facts adduced at the trial" in the underlying action. [Citations omitted]. "Even so, the duty to *defend* is broader than the duty to *indemnify*. [Citation omitted] Accordingly, where the court finds that there is no duty to *defend,* it also must find that there is no duty to *indemnify*." *Id.* at 1316.[3]

---

[3] *Accord, Pa. Nat'l Mut. Cas. Ins. Co. v. Snead Door, LLC*, 2013 WL 550483, * 6-7 (N.D. Ala. 2013) (Hopkins, J.) (no coverage based on pollution exclusion and work-product exclusion, hence: "Because the duty to defend is broader than the duty to indemnify, and this court has found that there is no duty to defend based on the application of the Policy's exclusions to the record before it, the court necessarily concludes that Penn National does not owe Snead any duty to indemnify."); *Auto-Owners Ins. Co. v. McMillan Trucking, Inc*., 242 F.Supp.3d 1259, 1262, 1266 (N.D. Ala. 2017) (no duty to indemnify when duty to defend because claim did not come within "occurrence" requirement of coverage grant and fell within exclusion for knowing misconduct); *Geovera Specialty Ins. Co. v. Bonds,* 2015 WL 3647004, *5 (S.D. Ala. 2015) ("[a]s recent Eleventh Circuit precedent confirms, a judicial determination of no duty to defend compels a finding of no duty to indemnify."); *State Farm Mut. Auto. Ins. Co. v. Christian,* 2013 WL 5350672, *5 (N.D. Ala. 2013) (finding no duty to defend for absence of an "accident" under the grant of coverage, so "Since the duty to defend is broader than the duty to indemnify, AICH also has no duty to indemnify Christian."). *But see Allstate Indem. Co. v. Berrey*, 206 WL 3906414, *15 (N.D. Ala. 2016) (Hopkins, J.) (court declared no duty to defend but stayed duty to indemnify until completion of underlying trial: case involved complex real estate holdings and operations by insured including property in a subdivision he owned, property individually owned, and part of property that was vacant, where deceased died from injuries sustained in a water filled culvert running between road and some of the properties).

While federal law controls this Court's jurisdiction, Alabama law may provide some influence on the exercise of discretion to decide an insurance coverage declaratory judgment. In *Pa. Nat'l Mut. Cas. Ins. Co. v. Snead Door, LLC*, 2013 WL 550483, *6-7 (N.D. Ala. 2013), the court referred to an Alabama coverage case in holding a finding that no duty to defend defeated the duty to indemnify: "Because the duty to defend is broader than the duty to indemnify, and this court has found that there is no duty to defend based on the application of the Policy's exclusions to the record before it, the court necessarily concludes that Penn National does not owe Snead any duty to indemnify." ***See, e.g., United States Fidelity and Guarantee Co. v. Bonitz Insulation Co. of Alabama, 424 So.2d 569, 572 (Ala.1982) (holding that, because there was no coverage under the applicable insurance policy because there was not an "accident," the insurer owed no duty to defend its insured "and also, of course, no liability for any judgment rendered in that action")***; *see also Employers Mut. Cas. Co. v. Evans,* 76 F.Supp.2d 1257, 1262 (N.D.Ala.1999) (noting that "a determination that there is no duty to defend may well determine the duty to indemnify issue")" (emphasis added). *See also Grange Mut. Cas. Co. v. Indian Summer Carpet Mills, Inc.*, 2017 WL 5521610, *4 & n. 6 (N.D. Ala. 2017) (in diversity case briefing requested on "to what extent the Court … must (or should) rely upon Alabama

law" regarding ripeness).  (See brief in response to order, Case 4:17-cv-01263-ACA, Doc. 27, pp. 16-18 of 26).

Turning to Alabama law, declaratory judgment actions for coverage are the preferred course. Declaratory judgment actions are "especially useful in insurance policy disputes." *Morton v. Allstate Ins. Co.*, 486 So. 2d 1263, 1269 (Ala. 1986) (quoting *Federated Guar. Life Ins. Co., Inc. v. Bragg*, 393 So. 2d 1386, 1389 (Ala. 1981)).  For example:

➤ In *Tapscott v. Allstate Ins. Co.*, 526 So. 2d 570 (Ala. 1988), the plaintiff sued the insured for false arrest and the tort of outrage when the insured swore a warrant for the plaintiff's cutting a Christmas tree on the insured's land.  The court held as a matter of law Allstate had no duty to defend or indemnify the insured for those claims in the underlying suit because they alleged intentional conduct: "There is clearly no dispute over what allegations are made in the complaint at this stage... [The insured's liability] is a dispute that goes to the merits of the complaint rather than the issue in this case ... whether … the plaintiff alleges intentional conduct." *Id.* at 572.

➤ *Auto-Owners Ins. Co. v. Am. Central Ins. Co.*, 739 So. 2d 1078, 1081 (Ala. 1999) (no indemnity for fraternity hazing);

➢ *McCauley v. Estes*, 726 So. 2d 719, 720 (Ala. 1998) (no indemnity for invasion of privacy by videoing a female showering).[4]

Furthermore, the <u>coverage issue</u> is not determined by the guilt or innocence of the defendant at trial.   Rather, coverage is determined by the nature of the allegations of the complaint and policy language.  *See Acceptance Ins. Co. v. Nat'l Auction Group, Inc.*, CV-98-AR-1002-M (order, Oct. 30, 1998) (attached in Appendix 1).

Here, Cooke did not drive an "insured auto" in the accident – a threshold requirement of coverage under the policy as in *Sexton* and *Horace Mann*. Regardless of amendments to the complaint or the verdict on Cooke's innocence or guilt, such cannot change the <u>fact</u> he was not driving an "insured auto." Accordingly, there is no justification to delay the decision in this case.

Vanns' cases do not alter this result.   While quoting general language on ripeness, two of the cases cited by the Vanns actually held the issue was ripe:

---

[4] In some cases, staying decision on the duty to indemnify may be appropriate when a crucial issue on coverage must be decided in the underlying trial.   For example, if coverage depends upon whether an alleged fraud was committed by defendant intentionally (not covered) or was innocent or mistaken (covered), then it makes sense for the jury to answer that question on intent. Or, by example, if the declaratory action seeks to try a determinative issue on which liability depends in the underlying case.  *See Sparks Construction Co., Inc. v. General Mutual Ins. Co.*, 334 So. 2d 897 (Ala. 1976).  But that is not this case.

➢ *Abbot Labs v. Gardner*, 387 U.S. 136, 149 (1967) (manufacturer's request for declaratory relief of sufficiency of drug labels under regulations in personal injury actions was ripe);

➢ *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 244 (1937) (prayer for declaration on carrier's obligation to pay future disability benefits was ripe).

The remaining cases do not support deferring the controlling threshold issues here whether Cooke drove an "insured auto":

➢ In *Thomas v. Aigen*, 2017 WL 6034197 (N.D. Ala. 2017), the court did not decide ripeness, but granted plaintiffs leave to file an amended motion addressing diversity jurisdiction and ripeness;

➢ *Emp'rs Mut. Cas. Co. v. All Seasons Window & Door Mfg.* 387 F. Supp. 2d 1205 (S.D. Ala. 2005), concerned a claim for installation of defective windows. A claim for defect in the insureds' product or work raises a host of coverage issues under a CGL policy.[5] That is quite different from the issue here where Cooke did not satisfy the threshold issue of driving an "insured auto;"

➢ *St. Paul United Meth. Church v. Gulf States Conf. Ass'n of Seventh Day Adventists,* 2012 WL 4477653 (M.D. Ala. 2012) is inapplicable: it involved

---

[5] The court observed the complexity of the coverage issue: "[T]he [declaratory complaint] identifies a <u>laundry list</u> of policy provisions and 'prays that the Court construe the policies and declare that EMC is under no duty to pay on behalf of All Seasons or WHS in connection with any amounts recovered from them in the underlying litigation.'" *Id.* (Emphasis added).

an indemnity clause in a summer camp rental agreement for a church sponsored summer camp when a camper was injured in an accident;

➢ In *Brown & Root, Inc. v. Big Rock Corp.*, 383 F.2d 662, 665 (5th Cir. 1967), Brown & Root tried to secure a summary judgment on a malicious prosecution counterclaim for lack of probable cause. That declaratory claim was held not ripe, because the malicious prosecution claim could be decided in adjudication of the counterclaim.

➢ The court did not hold indemnity was unripe in *Grange Mut. Cas. Co. v. Indian Summer Carpet Mills, Inc.*, 2017 WL 5521610 (N.D. Ala. 2017); but rather, granted the carrier leave to brief the diversity amount in controversy as well as ripeness. Interestingly, the court required briefing on "(ii) to what extent the Court (because diversity has been invoked) must (or should) rely upon Alabama law regarding "premature" indemnity claims to inform its determination concerning constitutional and prudential ripeness." *Id.* at *4 & n. 6.[6]

---

[6] Footnote 6 stated; "'Under the *Erie* doctrine, a federal court adjudicating state law claims applies the substantive law of the state.'" *Sphinx Intern., Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 412 F.3d 1224, 1227 (11th Cir. 2005) (quoting *Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1232 (11th Cir. 2004) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188 (1938)). Moreover, the substantive law of the state governs the interpretation of insurance contracts. *Provau v. State Farm Mut. Ins. Co.*, 772 F.2d 817, 819 (11th Cir. 1985). Hence, the insurance contract issues in this case are governed by Alabama law."

➢ The Vanns do not cite the later order in *Granger*, 2018 WL 3536625 following briefing, where the court declared the carrier had no duty to indemnify based upon (i) the parties consenting to no duty to indemnify because of a pollution exclusion, <u>and</u> (ii) the case law holding the pollution exclusion barred coverage.  Under the second prong, the pollution exclusion was a <u>threshold</u> coverage defense barring the duty to defend and indemnify.

Lastly, the Vanns' assertion under the *Ameritus*[7] factor that Progressive is trying "to deprive the underlying plaintiffs' choice of forum," is untrue.  Nor will the underlying state court auto case decide coverage under the policy.  In fact, insurance cannot be injected into the underlying suit.[8]

## <u>CONCLUSION</u>

The coverage issue here is concrete, well-delineated, defined, and appropriate for decision at this time.  The complaint quotes the coverage grant that requires an accident "arising out of the ownership, maintenance or use of an 'insured auto.'"  Here, Cooke did not drive an insured auto in the accident, so the claim does not come within the coverage clause.  Under the case law above, courts decide duty to indemnify when the issue is that the loss is not within the grant of coverage.

---

[7] *Ameritus Variable Life Ins. Co. v. Roach*, 411 F.3d 1328 (11th Cir. 2005).
[8] Ala. R. Civ. P. 18(c): "(c) *Liability insurance coverage.* In no event shall this or any other rule be construed to permit a jury trial of a liability insurance coverage question jointly with the trial of a related damage claim against an insured."

This is a concrete, threshold issue. Both federal and Alabama courts hold the duty to indemnify is ripe.  There is no reason to defer ruling on indemnity until trial.  Progressive prays that the Court deny the motion to dismiss.

Respectfully submitted,

*J. Mark Hart*
J. Mark Hart (asb-5059-a61j)
Robert B. Reardon (asb-1469-j29e)
*Attorneys for Progressive Specialty*
*Insurance Company*

**OF COUNSEL:**

HAND ARENDALL HARRISON SALE LLC
1801 5th Avenue North, Suite 400
Birmingham AL 35203
205-324-4400
mhart@handfirm.com
breardon@handfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2020 a true and correct copy of the foregoing has been served electronically upon the following counsel of record via CM/ECF or by U.S. Mail, postage prepaid and properly addressed as follows:

Rachel Catherine Buck
Frank S. Buck, P.C.
2160 14th Avenue South
Birmingham, AL 35255-5089
rachel.buck@frankbucklawoffice.com
*Attorney for Francis Patricia Vann and*
*Ricardo Vann*

T&C Transport, LLC
1408 Monroe Avenue SW, Apt. 12
Birmingham, AL 35211

T&C Transport, LLC
c/o Aaron Cooke
2821 Sydney Drive #205
Birmingham, AL 35211

Aaron Demetrius Cooke
4400 Hunter Ridge Lane
Birmingham, AL 35235


*J. Mark Hart*_____
OF COUNSEL

# APPENDIX 1

FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

98 OCT 30  PM 3: 39

U.S. DISTRICT COURT
N.D. OF ALABAMA

ACCEPTANCE INSURANCE )
COMPANY, )
                                            )
        Plaintiff, )
                                            )
v. )           CV-98-AR-1002-M
                                            )
NATIONAL AUCTION GROUP, )
INC., )
                                            )
        Defendant. )

ENTERED

OCT 3 0 1998

## MEMORANDUM OPINION

The court presently has before it a motion for summary
judgment by plaintiff Acceptance Insurance Company ("AIC"). AIC
seeks a declaratory judgment that it is not required to provide a
defense for or to indemnify defendant, National Auction Group,
Inc. ("NAG"), in a separate action brought against NAG in a
Georgia state court. Jurisdiction in this court exists pursuant
to 28 U.S.C. §§ 1331 and 2201.

### Factual History

NAG and three other defendants were sued by Carlie Hammond
in the Superior Court of Georgia in October, 1997 (the "Hammond
action"). In that suit, Hammond complains that her former
friends, Lloyd and Bonnie Anderson, had wronged her in connection
with the auction of a home which the Andersons owned. NAG was
the auctioneer and was named as a party defendant. NAG had been
issued a policy of liability insurance by AIC for the period from
December 1, 1996 to December 1, 1997.

- Page 1 -

On April 27, 1998, AIC filed the present action seeking a declaratory judgment that NAG's liability insurance policy did not cover the wrongs alleged in the Hammond action and that AIC was required neither to defend nor indemnify NAG in that suit. In addition to its answer to AIC's complaint, NAG asserted a counterclaim requesting a declaratory judgment to the opposite effect.

### Discussion

AIC's policy of liability insurance does not cover claims for intentional torts. This exclusion from coverage is contained in two portions of the insurance contract. First, Section I.A.(1)(b) of the insuring agreement between AIC and NAG states that:

> This insurance applies to "bodily injury" and "property damage" only if:
> (1) The "bodily injury" or "property damage" is caused by an "occurrence."

Elsewhere in the contract, the term "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions" (emphasis added). Because intentional torts are not "accidental," such torts are not occurrences for purposes of the insurance and are thus not covered. Second, Exclusion A of the contract excludes from coverage those injuries which are either "expected or intended from the standpoint of the insured." Furthermore, even if the policy purported to cover intentional torts, Alabama law prohibits indemnification of such as contrary to public policy. *See, e.g., Price-Williams Associates, Inc., et al., v. Nelson, et al.,* 631 So.2d 1016 (Ala. 1994).

- Page 2 -

The question before this court is therefore whether the claims asserted in the Hammond action constitute intentional torts excluded from the AIC liability insurance policy. Generally, "the obligation of a liability insurer, under a policy requiring it to defend its insured in an action brought by a third party, is determined by the allegation of the complaint in such action." *Ladner & Co. v. So. Guaranty Ins. Co.*, 347 So.2d 100, 102 (Ala. 1977)("Ladner")(emphasis added). However, a court "should liberally construe the complaint in the underlying action and may look to facts outside the allegation which may be proved by admissible evidence." *Id.*

In the Hammond action, plaintiff alleges that Lloyd and Bonnie Anderson feared that the auction of their Georgia home would not garner a bid sufficient to cover the outstanding balance on their mortgage. To prevent this, they allegedly solicited Hammond to bid a minimum dollar amount secretly on their behalf, while allegedly telling her that she would not actually have to purchase the home if she became the successful bidder. Furthermore, Hammond alleges that NAG participated in this sham, and that when her bid became the successful bid, NAG fraudulently induced her to sign a contract for the home's purchase, while simultaneously representing to her that she would not really have to consummate the purchase. The Andersons and NAG later refused to return Hammond's "earnest money" in the amount of $64,500, which she voluntarily paid NAG after the auction and which she allegedly misunderstood merely to be part of the scheme. Hammond maintains that the Andersons and NAG

- Page 3 -

repeatedly represented to her that the entire bogus transaction
was legal, while knowing that such was illegal under Georgia law.

AIC points out that Hammond's complaint does not "mince
words":

> These statements... were false, known by
> Defendants Anderson to be false when made, and were
> made with the intent to deceive the Plaintiff... [NAG]
> was aware of the statements... and participated, and
> acquiesced in the making of said statements to your
> Plaintiff well knowing that the statements were false
> and fraudulent. [NAG represented] that it was legal and
> acceptable for her to bid on behalf of the [Anderson]
> Defendants, [and NAG] knew these statements to be false
> and fraudulent, and the said statements represent a
> misrepresentation with the intent to deceive."

*Complaint, ¶¶ 7 and 8.*

NAG argues that even if Hammond was harmed by the auction
transaction, NAG and its employees did not intend such harm.
They have filed affidavits to support this claim. Despite NAG's
denial, however, the court agrees with AIC that "the fact that
the insured denies it intentionally defrauded the plaintiff does
not change the fact that the plaintiff <u>accuses</u> the insured of
intentional fraud. What is material to coverage is the nature of
plaintiff's claim and not the insured's denial of that claim."
*Reply Brief in Support of Summary Judgment, at 3.* According to
the Supreme Court of Alabama, the fact that the insured "filed an
affidavit denying the allegations in the complaint in no way
affects the nature of the plaintiff's claim for an intentional
tort, and certainly, it has no bearing on [the insured's]
responsibility to defend or indemnify." *Tapscott v. Allstate
Ins. Co.*, 526 So.2d 570, 575 (Ala. 1988)("Tapscott"). NAG's
denial of intent to harm simply isn't relevant to this

- Page 4 -

declaratory judgment case.  Otherwise, the court would have to determine NAG's actual intent, and that would require the court impermissibly to decide substantive issues in the underlying Hammond action.  *See, e.g., English, et al., v. Alfa Mutual Ins. Co.,* 554 So.2d 1021 (Ala. 1989).

If Hammond's complaint was for negligent misrepresentation, a cause of action that is viable under Alabama law, the situation might be different.  Even if NAG's actual intent were at issue, federal courts interpreting Alabama law have found that "intentional wrongs" may include intentionally doing some act which reasonable and ordinary prudence would indicate is likely to result in injury.  *American & Foreign Ins. Co., et al., v. Colonial Mortgage Co., Inc., et al.,* 936 F.2d 1162, 1166 (11th Cir. 1991)("Colonial Mortgage"); *St. Paul Insurance Companies v. Talladega Nursing Home, Inc., et al.,* 606 F.2d 631, 634 (5th Cir. 1979)("St. Paul").  NAG is a corporation engaged in the business of conducting auctions, and as such, it is charged with having at least general familiarity with the laws governing its business.  Reasonable and ordinary prudence would have prevented NAG, even absent intent to defraud, from making the alleged misrepresentations to Hammond.  Under *Colonial Mortgage* and *St. Paul,* NAG's alleged tortious acts would be deemed intentional torts since they involve intended acts which "reasonable and ordinary prudence would indicate likely to result in injury." *St. Paul, at 634*.

There is no indication in the record that Hammond is asserting any theory of liability other than an intentional

- Page 5 -

wrong.  As a result, the conduct alleged in the underlying
Hammond action is not covered by the contract of liability
insurance between AIC and NAG.

AIC additionally argues that the activities alleged in the
Hammond action would not be covered by NAG's policy for a second
reason.  The insurance contract contains a Professional Services
exclusion which states

> With respect to any professional service shown in the
> Schedule, this insurance does not apply to "bodily
> injury," "property damage," "personal injury," or
> "advertising injury" due to the rendering or failure to
> render any professional service.

This "Endorsement," or amendment, to the insurance contract
contains a schedule describing professional services to be
excluded, and includes "AUCTIONEERS - SALES CONDUCTED AWAY FROM
THE INSURED'S PREMISES."  Because the tortious acts alleged in
the Hammond action occurred at the auctioned property and home
itself, and not on NAG's premises, the court finds that the
auction in question would have constituted "professional
services" within the meaning of the exclusion.  As a result, Ms.
Hammond's allegations of tortious conduct, whether intentional or
unintentional, are not covered by the insurance agreement in
question.  Therefore, due to the professional services exclusion
alone, AIC is not required either to defend or indemnify NAG in
that action.

Under *Ladner* and *Tapscott*, if the complaint is later amended
to include claims which are covered under the insurance policy,
AIC may consequently be required to defend and indemnify for
those claims. *See Ladner, at 104* (insurer that refuses to defend

- Page 6 -

does so at its own peril); *Tapscott, at 575*.  To guard against
the danger that insured defendants and the plaintiffs suing them
will not collusively amend the underlying complaint, or even
settle, in order to gain coverage, insurance companies often have
an incentive to provide a defense, despite the fact that they are
not required to do so.  In the Hammond action, the interests of
both NAG and Hammond are aligned to the extent that they both
stand to gain if the contract of liability insurance is found to
cover Hammond's claims.  The court understands that AIC may
therefore have sufficient motivation to defend NAG in the Hammond
suit.  However, as presently postured, the Hammond claims do not
charge NAG with acts covered in the policy, and therefore AIC has
no present obligations.

Furthermore, whatever AIC's present or future obligations
under its insurance agreement with NAG, the clear language of the
contract precludes any duty to indemnify NAG for any punitive
damages for which NAG may become liable in the Hammond action.
The policy plainly states: "[I]t is understood and agreed that
this policy excludes any claim for punitive or exemplary damages
whether arising out of acts of the insured, insured's employees
or any other person."  Even if Hammond later amends her complaint
against NAG so as to trigger AIC's duty to defend and indemnify,
AIC is not required by the insurance agreement to indemnify NAG
for any punitive damages arising from such claims.

Finally, the court has before it two additional motions by
AIC, requesting that this court strike from evidence 1) certain
evidentiary materials filed by NAG and 2) NAG's "Response to

- Page 7 -

Acceptance's Reply Brief," filed without leave outside the guidelines established by this court's submission order, as amended on July 28, 1998. For the reasons discussed above, the court finds that the affidavits and video tape filed into evidence by NAG are irrelevant to the present action, because they attempt to persuade the court regarding the truth or falsity of the claims in the underlying Hammond action. As discussed above, the parties may not litigate the underlying action in the context of the present case. The court further finds nothing in the record indicating that NAG either requested or was granted leave to deviate from the directions of this court's submission order. The court notes, however, that even if all such evidence and argument were taken into consideration as submitted, the court would nevertheless be compelled to reach the same conclusion that the Hammond action, as presently postured, does not present claims requiring AIC either to defend or indemnify NAG.

<u>Conclusion</u>

For the reasons discussed above, the court finds that AIC's motion for summary judgment is due to be granted, and AIC's motion to strike certain affidavits and evidentiary submissions of NAG is due to be granted. Finally, AIC's motion to strike NAG's "Response to Acceptance's Reply Brief" is due to be granted. A separate and appropriate order will be entered.

DONE this _30_ day of October, 1998.

_____
WILLIAM M. ACKER
UNITED STATES DISTRICT JUDGE